**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BOGDAN LIZAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-C-1930 |
| | ) | |
| GREAT MASONRY, INC., and | ) | Judge Coar |
| KRZYSZTOF MENDYS, | ) | Magistrate Judge Nolan |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COUNT VI OF THE COMPLAINT**

Defendants, Great Masonry, Inc. ("Great Masonry") and Krzysztof Mendys ("Mendys"), through counsel, John J. Lynch of the law firm of James L. Kopecky, P.C., for their Memorandum of Law in Support of Their Motion to Dismiss pursuant to FRCP 12(b)(6), state as follows:

**INTRODUCTION**

Plaintiff filed a seven-count complaint. Counts I, II, IV and V allege failure to pay overtime premiums and wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL", 820 ILCS 105/1 *et seq.* Count III alleges retaliatory discharge in violation of Section 15 of the FLSA. Count VI alleges retaliatory discharge in violation of Illinois common law. And Count VII alleges a violation of the Illinois Employee Classification Act.

Defendants have answered Count I through V and VII. Defendants have moved to dismiss Count VI because it is preempted by the Illinois Whistleblower Act ("Whistleblower Act"), 740 ILCS 174/1 *et seq.* Additionally, even if Count VI is not preempted by the

Whistleblower Act, the Count should be dismissed as to Defendant Mendys because the Illinois tort of retaliatory discharge may only be brought against employers, not individuals.

Additionally, Count VI should be dismissed because it is essentially the same as Count III (retaliation in violation of the Fair Labor Standards Act), and, therefore, impermissibly seeks to expand the scope of the tort of retaliatory discharge.

## ARGUMENT

In considering a Motion to Dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint, including all reasonable inferences that could be drawn from those facts. McDonald v. Household Int'l, 423 F.3d 424, 425 (7th Cir. 2005). Here, accepting as true all the allegations in Plaintiff's complaint, the Court must dismiss Count VI for failure to state a claim.

**I.     The Illinois Whistleblower Act codified and preempts the tort of common law retaliatory discharge.**

Illinois enacted the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* (the "Act") effective January 1, 2004. Courts have ruled that the Act has codified the common law tort of retaliatory discharge in Illinois. Sutherland v. Norfolk So. Ry. Co., 826 N.E.2d 1021, 1025 n.4, 356 Ill. App. 3d 620, 624 n.4 (1st Dist. 2005); see also, Riedlinger v. Hudson Respiratory Care, Inc., 478 F. Supp. 2d 1051, 1054 (N.D. Ill. 2007); Jones v. Dew, 2006 WL 3718053 *3 (N.D. Ill., December 13, 2006) (copy attached) and cases cited therein.

The District Court has concluded that the Act preempts the common-law cause of action. In Riedlinger, the court:

> interpret[ed] Illinois law to provide that an employee has a cause of action for retaliatory discharge in Illinois only if he or she has revealed information he or she reasonably believes discloses a violation of a law or regulation to some government or law enforcement agency. Where an employee has revealed this information only to his or her employer, there is no cause of action in Illinois for

2

retaliatory discharge.

Riedlinger, 478 F. Supp. 2d at 1055. See also, Jones v. Dew, 2006 WL 3718053 at *4 (where plaintiff did not allege having made complaints to a government or law enforcement agency, she falls outside of the protection of the Act).

Here, as in Riedlinger and Jones, Plaintiff does not allege that he made any complaint to law enforcement or a governmental agency. Thus, because the Act preempts the common law tort, and because he does not fall within the protection of the Act, Count VI must be dismissed.

Defendants acknowledge that there is one Illinois Appellate Court case that reached a different conclusion from Riedlinger and Jones. See, Callahan v. Edgewater Care & Rehabilitation Ctr., Inc., 872 N.E.2d 551, 554, 374 Ill. App. 3d 630, 634 (1st Dist. 2007)(reaching the conclusion that the Act does not preempt the common law tort but, instead, "affords greater relief . . . to employees retaliated against in violation of its provisions"). Defendants maintain, however, that the District Court opinions contain the better analysis and more likely reflect how the Illinois Supreme Court would rule. That is particularly true when one considers that the "current policy of [the Illinois] supreme court is to restrict and narrow rather than expand the range of the retaliatory discharge cause of action." See, *e.g.*, Irizzary v. Illinois Central R.R. Co., 879 N.E.2d 1007, 1011, 377 Ill. App. 3d 486, 489 (1st Dist. 2007)(decided four months after Callahan but not addressing the issue of whether the Act preempts the common law tort cause of action) and cases cited therein.

Because there is no longer a common law cause of action for retaliatory discharge in Illinois, Count VI should be dismissed.

**II.    Even if not preempted by the Act, Plaintiff's common law claim must be dismissed.**

Even if the Court finds that the Act does not preempt the common law tort claim, Count

VI must be dismissed because the common law tort of retaliatory discharge in Illinois does not "encompass a private and individual grievance" such as Plaintiff's grievance in this case. Irizzary, 879 N.E.2d 1007 at 1012, 377 Ill. App. 3d at 490-91 (citations omitted).

In Irizzary, the Plaintiff was allegedly injured on the job and filed an injury report. Plaintiff alleged that he was terminated for filing the report and for potentially pursuing his rights under the Federal Employer's Liability Act ("FELA"). Id. at 1009-10, 377 Ill. App. 3d at 487. He filed a complaint seeking relief under FELA as well as under the common law tort of retaliatory discharge.

The Court, upholding its previous ruling in Sutherland, supra, declined to expand the tort of retaliatory discharge and gave a lengthy dissertation of previous Illinois supreme court and appellate court cases that have likewise refused to expand the tort. "[I]n light of our supreme court's expressed reluctance to expand the tort of retaliatory discharge, we refuse to extend the tort to employees discharged for filing FELA claims." Id. at 1013, 377 Ill. App. 3d at 492. See also, Sutherland, 826 N.E.2d at 1029, 356 Ill. App. 3d at 629 (where plaintiff has a remedy under FELA and the Railway Labor Act, "there is no compelling rationale to afford protection under Illinois retaliatory discharge law to cover employees discharged for filing FELA claims").

Similarly, here, Plaintiff has alleged a claim in Count III for retaliatory discharge under the FLSA. There is no rationale for expanding the tort of retaliatory discharge (if it still exists) to an action for which there is already statutory relief under federal law. If the plaintiffs in Irizzary and Sutherland could not maintain common law causes of action arising from alleged violations of federal law, then Plaintiff in this case cannot maintain his common law cause of action.

Thus, if the Court finds that there still exists a common law action for retaliatory

4

discharge in Illinois, the Court should still dismiss Count VI as it seeks to impermissibly expand that tort in contravention of Illinois' courts' repeated refusals to do so.

### III. Even if not preempted by the Act, Plaintiff's common law claim must be dismissed as against Mendys.

In Count VI, Plaintiff seeks relief against Mendys. Whether under the Whistleblower Act or the common law tort of retaliatory discharge, the state law claim of retaliatory discharge cannot lie against Mendys, an individual defendant. See, Averett v. Chicago Patrolmen's Federal Credit Union, 2007 WL 952034 *5 (N.D. Ill. March 27, 2007)(copy attached)(holding that the Act does not provide for individual liability because "Illinois courts have unequivocally stated that only employers – and not agents or employees of the employer – can commit the tort of retaliatory discharge"), citing, Buckner v. Atlantic Plant Maint., Inc., 694 N.E.2d 565, 569-70, 182 Ill. 2d 12 (1998).

Thus, regardless of how the Court rules on the issues of preemption and the sustainability or Plaintiff's cause of action for common law retaliatory discharge, the Court must dismiss Count VI as against Defendant Mendys.

WHEREFORE, Defendants respectfully request that this honorable Court enter an Order dismissing Count VI of the Complaint and granting such other relief as this Court may deem just and appropriate.

July 23, 2008　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　Great Masonry, Inc. and Krzysztof Mendys

　　　　　　　　　　　　　　By:　　　s/John J. Lynch
James L. Kopecky, P.C.　　　　　　　　John J. Lynch
190 S. LaSalle Street, Suite 850-A　　　One of Defendants' attorneys
Chicago, Illinois 60603
Ph: (312) 380-6553
IL ARDC No. 6225509

# EXHIBIT A

# UNREPORTED CASES CITED IN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Westlaw.

Slip Copy
Slip Copy, 2006 WL 3718053 (N.D.Ill.)
**2006 WL 3718053 (N.D.Ill.)**

Page 1

▷
Jones v. Dew
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
Velma JONES, Plaintiff,
v.
Donald J. DEW, President/CEO; Dee Hammock, Benefits/Payroll Specialist; Habilitative Systems, Inc., Defendants.
No. 06 C 3577.

Dec. 13, 2006.

Velma Jones, Chicago, IL, pro se.
Nicole K. Peracke, Yvette Anayis Heintzelman, Seyfarth Shaw LLP, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

MORAN, Senior J.
*1 Plaintiff Velma Jones brought this action against Donald Dew, Dee Hammock, and Habilitative Systems, Inc. for injuries she sustained related to her employment and subsequent termination. Plaintiff originally filed this action in state court on March 9, 2006. After an initial dismissal, plaintiff filed an amended complaint, which was removed to this court. Defendants bring this motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, we grant defendants' motion and dismiss plaintiff's complaint without prejudice.

*BACKGROUND*

In reviewing a motion to dismiss under Rule 12(b)(6), we accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. *McDonald v. Household Intern.,* 425 F.3d 424, 425 (7th Cir.2005). The complaint should be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted."*Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115, 1118 (7th Cir.1995).*See alsoConley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). And given that plaintiff appears *pro se,* her complaint is held to " 'less stringent standards than formal pleadings drafted by lawyers,' and can be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' " *Henderson v. Sheahan,* 196 F.3d 839, 845-46 (7th Cir.1999) (internal citations omitted).

We take the following facts from the plaintiff's complaint. Plaintiff was employed with defendant Habilitative Services, Inc. from December 24, 1991, until her termination on September 28, 2004. During the course of her employment, plaintiff made formal complaints-often on behalf of patients-regarding rat infestation at Habilitative Services. In 2003, the rat problem was ignored and worsened, and led to deterioration of plaintiff's physical and mental health. Plaintiff's complaints to her supervisors, managers, and the CEO, defendant Dew, were met with indifference, humiliation, and at least one racial slur. Due to the rat infestation and her supervisors' reactions to her complaints, plaintiff suffered mental and physical health problems requiring medical and psychological treatment. On February 16, 2004, plaintiff's doctor verified plaintiff's health complaints and indicated that her work-related conditions would prevent her from returning to work. Even so, defendants treated plaintiff's condition as non-work related, and she was denied benefits under the Workman's Compensation Act. Although plaintiff was not medically released to return to work until November 14, 2004, defendants terminated her employment effective September 28, 2004.

Attached to her complaint, plaintiff included 16 exhibits, documenting her medical treatment and cor-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

respondence with her employers and benefits providers. Her exhibits show the following. Plaintiff began medical leave on January 22, 2004, at the direction of Dr. Scott, who again stated on February 16, 2004, that plaintiff was unable to work. Thereafter, on February 23, 2004, plaintiff received a letter from her employer, documenting her options for medical and disability leave, and explaining the process for applying for additional benefits under the Family Medical Leave Act ("FMLA"). Plaintiff's workman's compensation claim was denied in a report dated May 27, 2004. In a letter dated September 17, 2004, defendant Hammock indicated that plaintiff had failed to forward supporting documents from her doctor stating that she was unable to perform the essential functions of her job. Under Personnel Policy 601:2-3, the human resources department would assume that plaintiff voluntarily quit her job. Finally, in a letter dated October 5, 2004, the human resources director stated that because plaintiff failed to accept the offer of return to her employ as a Residential Manager with Habilitative Services, Inc., her termination would be effective September 28, 2004.

*2 Plaintiff now brings this claim alleging wrongful termination/retaliatory discharge, intentional infliction of emotional harm, and violation of the FMLA, 29 U.S.C. § 2601 *et seq* .

*DISCUSSION*

As our jurisdiction turns on the success or failure of plaintiff's FMLA claim, we begin our analysis there. Defendants correctly state that the FMLA entitles an eligible employee to a total of 12 unpaid workweeks of leave during any 12-month period for a serious health condition, 29 U.S.C. § 2612.FN1Plaintiff suggests that defendants "padded" the record to indicate that plaintiff's injury was not work-related, thus causing her to be denied benefits, workman's compensation, and insurance benefits (am.cplt, ¶ 37). Plaintiff further suggests that such actions "circumvent[ed] the 'intent' of the Family Medical Leave Act."(*Id.*, at ¶ 38).

> FN1.Section 2612 was recognized as unconstitutional in *Touvell v. Ohio Dept. Of Mental Retardation and Developmental Disabilities,* 422 F.3d 392 (6th Cir.2005) as the "self-care" provision relates to state liability. *See also Toeller v. Wisconsin Dept. of Corrections,* 461 F.3d 871 (7th Cir.2006). As plaintiff is employed by a private organization, such determinations are inapposite.

Plaintiff's complaint, in conjunction with the exhibits attached thereto, details the following timeline. Plaintiff was "injured" on December 2, 2003.(*Id.,* at ¶ 8). Plaintiff took medical leave beginning on January 22, 2004.(*Id.,* at exh. 1). On February 23, 2004, plaintiff received a letter specifying defendant's policy for disability benefits and medical leave.(*Id.,* at exh. 3). The letter indicates that plaintiff would receive an initial leave of absence for a period not to exceed 90 days from the last day worked, upon receipt of doctor's statement. The letter continues: "You may request an extension to your leave if needed, and if available without pay, under the Family Medical Leave Act.... The time you spend on your disability leave will be credited toward the twelve (12) weeks of leave without pay under the Family and Medical Leave Act; Policy 604."(*Id.*). Plaintiff was terminated from her employment effective September 29, 2004. Counting either from December 2, 2003 or January 22, 2004, plaintiff was granted more than the 12 weeks guaranteed under the FMLA.

The FMLA does require that the employer continue to "maintain coverage under any 'group health plan' for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave."29 U.S.C. § 2614(c)(1). Plaintiff's complaint implies that she was forced to pay excessive medical bills out of her own pocket (am.cplt., ¶ 37). If defendant employer violated § 2614, plaintiff may

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

have an FMLA claim. It appears, however, from the letter of February 23, 2004, that plaintiff continued to receive medical insurance coverage under Habilitative Systems Inc.'s HMO medical insurance policy (*id.,* at exh. 3), at least for some period of time. Although we liberally construe plaintiff's complaint in her favor, if we read plaintiff's complaint and exhibits correctly, plaintiff has essentially pled herself out of court. *Henderson,* 196 F.3d at 846 (although a *pro se* plaintiff's complaint is held to less stringent standards than formal pleadings drafted by lawyers, "a *pro se* complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint"). Therefore, we dismiss plaintiff's FMLA claim, without prejudice, in case plaintiff may be able to amend her complaint to successfully allege that defendants did in fact violate the FMLA.

*3 Our jurisdiction over plaintiff's claims rests on her FMLA claim. In the usual course, we would dismiss the remainder of plaintiff's state law claims. Because, however, plaintiff has already been through the state court system and her claims are easy to deal with at this stage, we address them now.

In Illinois, to state a claim for retaliatory discharge plaintiff must plead that she has been discharged; the discharge was in retaliation for the employee's activities; and the discharge violates a clearly mandated public policy. *Greary v. Telular Corp.,* 341 Ill.App.3d 694, 275 Ill.Dec. 648, 793 N.E.2d 128, 133-34 (Ill.App.Ct.2003). Illinois courts have construed the common law claim of retaliatory discharge narrowly, generally in only two situations: (1) where assertion of a worker's compensation claim leads to employee's discharge (*Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978)), and (2) where discharge stems from the employee's "whistle-blowing" activities (*Palmateer v. Int'l Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981)).*See also Greary,* 275 Ill.Dec. 648, 793 N.E.2d at 134.

Plaintiff clearly asserts retaliatory discharge based on whistle-blowing activities. Specifically, she asserts that she made numerous formal complaints to her supervisors and defendant Dew, regarding the alleged rat infestation. She further alleges that the rat problem, in addition to the retaliation she suffered for making complaints, led to severe emotional and mental distress, causing her to take a medical leave of absence from her job.

Effective January 1, 2004, the Illinois state legislature passed the Illinois Whistleblower Act, 740 ILCS 174/1*et seq* ("Act"). Under that Act "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."740 ILCS 174/15. Although only a few courts have construed the Act, there is some indication that the Act codifies, and therefore preempts, any common law retaliatory discharge claim based on whistle-blowing activities. *SeeSunderland v. Norfolk Southern Ry. Co.,* 356 Ill.App.3d 620, 292 Ill.Dec. 585, 826 N.E.2d 1021, 1026, n4 (Ill.App.Ct.2005) ( "The 'whistleblower' cause of action has since been codified in the Whistleblower Act"); *Sprinkle v. Lowe's Home Centers, Inc.,* 2006 WL 2038580, *5 (S.D.Ill.2006) (The Illinois Whistleblower Act is the codification of the common law claim of retaliatory discharge).*Cf.Krum v. Chicago Nat. League Ball Club, Inc.,* 365 Ill.App.3d 785, 303 Ill.Dec. 434, 851 N.E.2d 621 (Ill.App.Ct.2006) (because plaintiff could not satisfy the first element of the common law claim for retaliatory discharge, the court did not reach the question of whether the Whistleblower Act preempted plaintiff's claim). The legislative history of the Act supports this contention. The House bill sponsor stated his belief that there was no cause of action for retaliatory discharge stemming from disclosing a violation of law to the authorities, and that "[c]ommon sense would tell you that you should have that protection and this law would codify that."IL H.R. Trans. 2003 Reg. Sess. No. 63. Thus, we treat the Act as a codification of the common

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

law tort of retaliatory discharge based on whistle-blowing activities, and determine whether plaintiff's claim falls within the ambit of the Act.

*4 We find that it does not. Plaintiff clearly alleges that she made formal complaints to her supervisors and CEO of Habilitative Systems, Inc. She does not allege that she made any complaints to a government or law enforcement agency. Thus, she falls outside the protections of the Act. *Smith v. Madison Mut. Ins. Co.*, 2005 WL 1460301, *1 (S.D.Ill.2005) ("While the Act prevents retaliation against an employee who disclosed information to a government or law enforcement agency, it does not protect an employee who disclosed information to her own company").

It is unclear from plaintiff's complaint whether she also complains of wrongful discharge based on her claims for workman's compensation. At some point plaintiff did apply for workman's compensation and was denied such benefits (*see* am. cplt. exhs. 5,9). Although it was unclear when she made her original claim, plaintiff stopped working due to physical and mental ailments on December 2, 2003, was denied workman's compensation benefits on May 27, 2004, and was terminated on September 28, 2004. As noted above, Illinois courts have allowed for claims of retaliatory discharge where plaintiff was discharged for filing a claim under the Workman's Compensation Act. *Kelsay*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353;*Clemons v. Mechanical Devices, Co.*, 292 Ill.App.3d 242, 226 Ill.Dec. 141, 684 N.E.2d 1344 (Ill.App.Ct.1997).*See alsoFiumetto v. Garrett Enterprises, Inc.*, 321 Ill.App.3d 946, 255 Ill.Dec. 510, 749 N.E.2d 992, 996-997 (Ill.App.Ct.2001) (finding a claim for retaliatory discharge where plaintiff was discharged in retaliation for seeking benefits under the Unemployment Act). Plaintiff's complaint summarizes her retaliatory discharge claim: "That as a result of plaintiff [sic] WRONGFUL TERMINATION which also was RETALIATORY in nature due to her constant incident reports concerning the rat infested condition at HABILITATIVE SYSTEMS, INC, and the deliberate neglect and abuse of patients, she has suffered in her reputation, her work record is now damaged, excessive medical bills that Habilitative Systems, Inc, insurance company was suppose [sic] to cover but refused; stress on her and her family; high blood pressure and a mental disability that will effect [sic] her now for the rest of her life" (am.cplt, ¶ 28). It seems to us apparent from this statement that plaintiff was not asserting a retaliatory discharge claim based on her workman's compensation or other benefits claim. Thus, we dismiss plaintiff's retaliatory discharge claim. We dismiss, however, without prejudice, so that plaintiff can amend her complaint to state a claim for discharge in retaliation for filing for benefits if applicable.

We turn to plaintiff's claim for intentional infliction of emotional distress.[FN2] Plaintiff claims that "the problems with the rats ... and rat dropping[s] created a work environment that caused plaintiff ... to suffer from an unusual condition of snorting and hysterics that has caused her permanent emotional and mental disability" (am.cplt, ¶ 33). Defendants argue that such a claim is barred by the two-year personal injury statute of limitations. We agree that the statute of limitations for intentional infliction of emotional distress in Illinois is two years. *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75, 85 (Ill.2003); *Pavlik v. Kornhaber*, 326 Ill.App.3d 731, 260 Ill.Dec. 331, 761 N.E.2d 175, 186 (Ill.App.Ct.2001). Plaintiff's complaint establishes that she initially left her employment with Habilitative Systems, Inc. on December 2, 2003 (am.cplt, ¶ 8) and her medical leave began on January 22, 2004 (*id.*, at exh. 1). Her original complaint was filed in the Circuit Court of Cook County on March 9, 2006. This is clearly more than two years after her injury.

> FN2. Plaintiff titled Count II "Deliberate Indifferent to Velma Jones Health and Job Security."Like defendants, we read such a claim to allege intentional infliction of emotional distress.

*5 Illinois courts have noted that the " 'purpose of a

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

statute of limitations is certainly not to shield a wrongdoer; rather it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions." ' *Hyon Waste Management Services, Inc. v. City of Chicago,* 214 Ill.App.3d 757, 158 Ill.Dec. 335, 574 N.E.2d 129, 132 (Ill.App.Ct .1991) (citing *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill.2d 129, 334 N.E.2d 160 (Ill.App.Ct.1975)). The statute of limitations period begins to run when the party's interests are invaded. *Id.* In cases of continuing violations, the statute of limitations does not begin to run until the tortious acts cease. *Pavlik,* 260 Ill.Dec. 331, 761 N.E.2d at 186-87. "A continuing violation, however, is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Hyon Waste Management Services, Inc.,* 158 Ill.Dec. 335, 574 N.E.2d at 132-33 (citing Ward v. Caulk, 650 F.2d 1144 (9th Cir.1981)). In this case, as defendants suggest, the last day of plaintiff's injury was the last day of her employment with Habilitative Services, Inc. Therefore, her intentional infliction of emotional distress claim is barred by the two-year statute of limitations.

Finally, individual defendants Dew and Hammock argue that they must be dismissed because plaintiff has failed to make any allegations as to their individual conduct. Because we dismiss plaintiff's complaint in its entirety, we dismiss it against all defendants and need not address this argument.

## CONCLUSION

For the reasons stated herein, we dismiss plaintiff's complaint without prejudice.

N.D.Ill.,2006.
Jones v. Dew
Slip Copy, 2006 WL 3718053 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d    Page 1
Not Reported in F.Supp.2d, 2007 WL 952034 (N.D.Ill.)
**(Cite as: 2007 WL 952034 (N.D.Ill.))**

▷
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Tanya AVERETT, Plaintiff,
v.
CHICAGO PATROLMEN'S FEDERAL CREDIT UNION; Scott Arney, individually and as employee of Chicago Patrolmen's Federal Credit Union; Bryan Milligan,
individually and as employee of Chicago Patrolmen's Federal Credit Union; and
Leslie Zalewski, individually and as employee of Chicago Patrolmen's Federal
Credit Union, Defendants.
No. 06 C 4606.

March 27, 2007.
Richard S. Zachary, Attorney at Law, Chicago, IL, for Plaintiff.

Valerie Lynne Kahn, Linda Kay Horras, Hinshaw & Culbertson, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

AMY J. ST. EVE, District Court Judge.

*1 Before the Court is Defendants' Motion to Dismiss Counts I and II of Plaintiff's Complaint pursuant to Rule 12(b)(6). For the following reasons, the Motion is granted in part and denied in part.

*BACKGROUND*
Plaintiff Tanya Averett's Complaint includes two retaliation claims against Defendants Chicago Patrolmen's Federal Credit Union ("CPFCU") and Scott Arney, Bryan Milligan, and Leslie Zalewski (collectively, the "individual defendants"): one under a federal statute, 12 U.S.C. § 1790b, providing whistleblower protection for credit union employees; and one under Illinois' Whistleblower Act, 740 ILCS 174/1 *et seq.* ("the Illinois statute"). In her prayer for relief, Plaintiff seeks punitive damages as well as other remedies.

The Illinois statute was enacted on August 18, 2003 with an effective date of January 1, 2004, and it prohibits "employers" from retaliating against "employees" "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15. It was passed against the backdrop of an Illinois common law retaliatory discharge cause of action allowing plaintiffs to recover against their employers if (1) the employee was discharged in retaliation for his or her activities; and (2) the discharge violated a clearly man public policy. *Chicago Commons Assoc. v. Hancock,* 346 Ill.App.3d 326, 281 Ill.Dec. 738, 804 N.E.2d 703, 705 (Ill.App.Ct.2004). This action allowed for actions based on reports of improper activities to public officials. *See, e.g., Lanning v. Morris Mobile Meals, Inc.,* 308 Ill.App.3d 490, 242 Ill.Dec. 173, 720 N.E.2d 1128, 1130 (Ill.App.Ct.1999).

While a full recitation of the facts in the Complaint is unnecessary, Plaintiff's Complaint includes the following allegations, which, as discussed below, the Court accepts as true for the purpose of addressing this motion. On or about September 29, 2003, Defendant CPFCU hired Plaintiff as a Financial Planning Coordinator. (R. 1-1, Compl.¶ 13.) In March 2004, she was promoted to the position of Internal Auditor, tasked with reviewing CPFCU's policies and procedures to ensure compliance with National Credit Union Administration ("NCUA") rules and regulations, performing operational and financial audits, documenting and monitoring CPFCU internal control systems, and issuing reports and recommendations. (*Id.* ¶ 14, 242 Ill.Dec. 173, 720 N.E.2d 1128.) In March 2005, Plaintiff was again promoted--to the position of manager over a CPFCU Compliance Officer--while also retaining her responsibilities as Internal Auditor. (*Id.* ¶ 15,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

242 Ill.Dec. 173, 720 N.E.2d 1128.)

During Plaintiff's time at CPFCU, it formed two internal committees to monitor the activities of CPFCU's staff and members, and to curtail abuses and violations: (1) the Supervisory Committee, comprised of five retired or active City of Chicago Police Officers; and (2) the Employee Suspicious Activity Committee ("ESAC"), comprised of the Internal Auditor, the Treasurer, and the Human Resources Director. (*Id.* ¶ 17, 242 Ill.Dec. 173, 720 N.E.2d 1128.)

*2 Around May 2005, Plaintiff discovered that Nick Gregor--the son of a Vice President at CPFCU external auditor Seldon Fox, Ltd.--was working as a CPFCU Loan Officer in violation of § 715.9 of the NCUA Rules and Regulations. (*Id.* ¶ 18-20.) Plaintiff brought this information to the attention of both the Supervisory Committee and Defendant Milligan, CPFCU's Chief Financial Officer. (*Id.* ¶ 21, 242 Ill.Dec. 173, 720 N.E.2d 1128.) The Supervisory Committee held a meeting on the matter, during which Defendant Arney admitted to hiring Gregor and promoting him to the position of Loan Officer, and during which both Arney and Milligan insisted that Seldon Fox remain CPFCU's external auditor. (*Id.* ¶ 22, 242 Ill.Dec. 173, 720 N.E.2d 1128.) Plaintiff also met with Supervisory Committee Chairman James Riordan about the matter, and Riordan in turn sent a letter to the Regional Director of the NCUA, requesting an official opinion on Seldon Fox's independence in light of Gregor's employment at CPFCU. (*Id.* ¶¶ 23-24.)

On or about August 16, 2005, the Supervisory Committee resolved that Milligan could no longer attend their meetings without a specific invitation. (*Id.* ¶ 28, 242 Ill.Dec. 173, 720 N.E.2d 1128.) Plaintiff alleges on information and belief that the Supervisory Committee reached this decision in response to Milligan's attempts to influence the Supervisory Committee's selection of a new external auditor to replace Seldon Fox. (*Id.*) On or about November 5, 2005, Plaintiff expressed her concerns about CPFCU senior management's attendance at Supervisory Committee meetings to NCUA examiner Cynthia Robinson. (*Id.* ¶ 30, 242 Ill.Dec. 173, 720 N.E.2d 1128.) Robinson later visited CPFCU's offices to discuss this issue, concluding that it was improper for senior management to attend Supervisory Committee meetings of a federally insured credit union because it could undercut the independence of the Supervisory Committee. (*Id.* ¶ 37, 242 Ill.Dec. 173, 720 N.E.2d 1128.)

On or about December 8, 2005, Defendant Milligan voiced vague concerns about Plaintiff's job performance to Plaintiff, and further told Plaintiff that it did not "make sense" for her to serve as CPFCU's contact with its new external auditor. (*Id.* ¶ 35, 242 Ill.Dec. 173, 720 N.E.2d 1128.) In response, Plaintiff filed a "Suspicious Activity Report" regarding Milligan with CPFCU's Human Resources Department, which was directed by Defendant Zalewski. (*Id.* ¶ 36, 242 Ill.Dec. 173, 720 N.E.2d 1128.) Plaintiff also eventually filed an official harassment complaint against Milligan, after which CPFCU suspended her employment. (*Id.* ¶ 42, 242 Ill.Dec. 173, 720 N.E.2d 1128.) On or about January 25, 2006, Plaintiff spoke with NCUA representatives about her situation at CPFCU, explaining her belief that her interference with senior management's attempts to "sidestep" NCUA rules and regulations on external auditing firms instigated Milligan's harassment. (*Id.* ¶ 43, 242 Ill.Dec. 173, 720 N.E.2d 1128.) Plaintiff was terminated from her employment at CPFCU on February 2, 2006. (*Id.* ¶ 44, 242 Ill.Dec. 173, 720 N.E.2d 1128.)

### *LEGAL STANDARD*

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint, not the merits of the case. *Cler v. Illinois Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir.2005). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortgage, Inc.,* 398 F.3d 930, 933 (7th Cir.2005) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 952034 (N.D.Ill.)
**(Cite as: 2007 WL 952034 (N.D.Ill.))**

Page 3

The Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers*, 398 F.3d at 933. "Federal complaints plead *claims* rather than facts." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7gth Cir.2006) (emphasis in original). As a result, "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate," and a complaint need not "allege facts corresponding to each aspect of a 'prima facie case' " to survive a motion to dismiss. *Id.* Except for in cases involving the two claims addressed in Fed.R.Civ.P. 9(b), "[a]ny decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal." *Id.* at 715.

*ANALYSIS*
**I. Punitive Damages**

*3 In their motion, Defendants challenge the availability of punitive damages under both of the statutes on which Plaintiff relies.

**A. Section 1790b**

In their opening memorandum, Defendants disputed the availability of punitive damages under § 1790b given that they are not among the three remedies expressly included in the statute, specifically: (1) reinstatement of an employee to his or her former position; (2) compensatory damages; or (3) "other appropriate actions to remedy any past discrimination." 12 U.S.C. § 1790b(c). Later, in their reply brief, Defendants appear to have abandoned this argument in deference to the opinion of the Northern District of Ohio in *McNett v. Hardin Cmty. Fed. Credit Union*, No. 3:02 CV 7576, 2006 WL 2473000 at *2 (N.D.Ohio Aug.24, 2006), which held that courts may award punitive damages in § 1790b actions. (R. 26-1, Reply on Mot. to Dismiss at 4 n. 1 (stating that the CPFCU "does not reply to the Plaintiff's arguments on punitive damages" given CPFCU's discovery of the *McNett* opinion after filing its opening brief).)

While the *McNett* opinion is persuasive rather than binding authority in the Northern District of Illinois, the conclusion of the *McNett* court appears sound, and the Court agrees that punitive damages are available under § 1790b. As the *McNett* court noted, *McNett*, 2006 WL 2473000 at * 2, the Supreme Court has forcefully held that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 70-71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Section 1790b does not provide any indication that Congress intended to exclude availability of punitive damages. Indeed, the language of § 1790b(c)(3)--allowing district courts to "take other appropriate actions to remedy any past discrimination"--suggests that Congress intended to provide district courts with broad discretion to craft appropriate remedies. Defendants' initial argument fails as a result, and their motion is denied with regard to the availability of punitive damages under § 1790b.

**B. The Illinois Statute**

Unlike § 1790b, the Illinois statute evinces legislative intent to proscribe punitive damages awards. [FN1] The Illinois statute was enacted in 2004, and few courts have construed it since. *See **Jones v. Dew**,* No. 06 C 3577, 2006 WL 3718053 at *3 (N.D.Ill.Dec.13, 2006). As a result, the Court must interpret its damages provision without the benefit of relevant precedent from the Illinois courts.

> FN1. This is not to say that the rule of *Franklin* necessarily applies to interpretation of the Illinois statute. "A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-01930　Document 23-2　Filed 07/23/2008　Page 10 of 13

Not Reported in F.Supp.2d　　Page 4
Not Reported in F.Supp.2d, 2007 WL 952034 (N.D.Ill.)
**(Cite as: 2007 WL 952034 (N.D.Ill.))**

422, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

In ascertaining the meaning of an Illinois statute, the Court must apply the same rules of statutory construction that the Supreme Court of Illinois would use if faced with the same task. *United States Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir.1997). We thus begin by examining the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *J.S.A. v. M.H.*, --- N.E.2d ----, No. 101697, 2007 WL 289829 at *7 (Ill. Feb.1, 2007). The Court must afford the statutory language its plain and ordinary meaning, and if the language is clear and unambiguous, the Court must apply the statute without further aids of statutory construction. *Id.*

*4 The Illinois statute's damages provision states that if an employer unlawfully retaliates against an employee in contravention of the provisions of the Illinois statute, the employee may bring a civil action against the employer:

> for *all relief necessary to make the employee whole,* including but not limited to the following, as appropriate: (1) reinstatement with the same seniority status that the employee would have had, but for the violation; (2) back pay, with interest; and (3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees.

740 ILCS 174/30 (emphasis added).

The Illinois statute thus provides only for recovery of the amount "necessary to make the employee whole." *Id.* The Illinois statute's inclusion of a section devoted exclusively to damages allowing only for "make whole" relief reveals the Illinois legislature's intent to exclude the availability of other types of damages for violation of the statute. *See, e.g., Mattis v. State Univs. Ret. Sys.*, 212 Ill.2d 58, 287 Ill.Dec. 541, 816 N.E.2d 303, 314 (Ill.2004) (as a matter of statutory construction, when a statute includes the things to which it refers, courts should consider omissions as exclusions). This contrasts sharply with § 1790b, which includes an open-ended list of possible remedies--including the broad "other appropriate actions" remedy in § 1790b(c)(3)--without a general damages provision defining the scope of damages available under the statute.

The plain meaning of "make whole" allows for compensation of loss to return the plaintiff to his former condition, but not for recovery of punitive damages. Illinois case law is consistent with this plain reading. *See, e.g., Hasler v. Industrial Comm'n*, 97 Ill.2d 46, 73 Ill.Dec. 447, 454 N.E.2d 307, 310 (Ill.1983) (to "compensate" and to "make whole" are synonymous). Punitive damages are by definition damages that go beyond those necessary to compensate an aggrieved party for its losses. *See, e.g., Loitz v. Remington Arms Co.*, 138 Ill.2d 404, 150 Ill.Dec. 510, 563 N.E.2d 397, 401 (Ill.1990) (punitive damages "are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (distinguishing punitive damages and those "sufficient to compensate [a plaintiff] for actual injury"); *Black's Law Dictionary* (8th ed.2004) (punitive damages are "[d]amages awarded in addition to actual damages," where actual damages are "[a]n amount awarded to a complainant to compensate for a proven injury or loss"). As a result, punitive damages are not available under the Illinois statute, and Plaintiff may not pursue punitive damages in connection with her Illinois retaliation claim.

The damages provision of the Illinois statute thus allows for damages different from those permitted under the common law retaliatory discharge claim, which provided for punitive damages. *See, e.g., Cross v. City of Chi.*, 352 Ill.App.3d 1, 287 Ill.Dec. 312, 815 N.E.2d 956, 964 (Ill.App.Ct.2004) (citing *Midgett v. Sackett-Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280, 1283 (Ill.1984)).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-01930    Document 23-2    Filed 07/23/2008    Page 11 of 13

Not Reported in F.Supp.2d                                                                                           Page 5
Not Reported in F.Supp.2d, 2007 WL 952034 (N.D.Ill.)
(Cite as: 2007 WL 952034 (N.D.Ill.))

Courts should generally construe statutes as adopting the common law, unless (1) the statute includes "clear and specific" language showing that a change was intended; or (2) the statute preempts the common law cause of action because it constitutes "general and comprehensive legislation [that] specifically describes course of conduct, parties, things affected, limitations, and exceptions." *In re C.B.L.*, 309 Ill.App.3d 888, 243 Ill.Dec. 284, 723 N.E.2d 316, 318 (Ill.App.Ct.1999) (internal quotation and citation omitted). While both conditions may well exist here, [FN2] as discussed above, the Illinois statute at a minimum clearly shows that the legislature intended to foreclose the availability of punitive damages to plaintiffs alleging retaliation for disclosing information to a government or law enforcement agency.

> FN2. Other courts have suggested that the Illinois statute preempts the common law retaliatory discharge claim. *See, e.g., Jones v. Dew*, 2006 WL 3718053 at *3. The Court declines to reach this issue, particularly insofar as such a conclusion could limit the ability of plaintiffs who disclosed relevant information to their employer--but not to a government or law enforcement agency--to pursue retaliation claims.

## II. Individual Liability

*5 Defendants also challenge Plaintiff's ability to sue the individual defendants under either § 1790b or the Illinois statute.

### A. Section 1790b

The individual defendants argue that they are not proper defendants under § 1790b. Like the Illinois statute, § 1790b has received very little attention from the courts. As a result, while the issue has been raised with at least one court in the past, [FN3] the parties have not cited any decisions analyzing whether credit union employees are proper defendants under § 1790b, and the Court has not found any such decisions. The Court must once again turn to the language of the statute to determine the merit of Defendants' claim.

> FN3. In *Garrett v. Langley Fed. Credit Union*, 121 F.Supp.2d 887, 897 (E.D.Va.2000), the plaintiffs initially argued that an officer and a board member of defendant credit union were personally liable for any violation of § 1790b. Without providing additional explanation, the *Garrett* court noted that the plaintiffs had "waived" this argument during the hearing on defendants' summary judgment motion. *Id.* While *Garrett* does not support Defendants' position (as they suggest it does) given that the *Garrett* court did not analyze the individual liability question, the outcome in *Garrett* suggests that the plaintiffs there may have abandoned their argument in the face of statutory language fatal to their initial position.

The plain language of § 1790b shows that it provides a cause of action only against insured credit unions and the NCUA, and not against individual defendants. Section 1790b(a), outlining the conduct prohibited by the statute, regulates the conduct of only two categories of actors--(1) insured credit unions; and (2) "the Administration," defined in 12 U.S.C. § 1752 as the NCUA. The remedies section of the statute, § 1790b(c), then provides remedies directed only against "the credit union or the Administration which committed the violation." The statute clearly and unequivocally does not prohibit any conduct by, or provide any remedy against, individual employees of insured credit unions or of the National Credit Union Administration.

### B. The Illinois Statute

Defendants next contend that the Illinois statute does not provide a cause of action against the individual defendants. Again, given the lack of guidance from previous cases, the Court turns to the language of the statute. The Illinois statute prohibits retaliation against employees by "an employer,"

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

740 ILCS 174/15, which is defined in the statute as "an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, except that 'employer' does not include any governmental entity." 740 ILCS 174/5. Plaintiff argues that inclusion of "an individual" in this list provides Plaintiff with a cause of action against CPFCU employees.

The Illinois statute does not provide a cause of action against the individual defendants. First, the "that has one or more employees in this State" language in the statute relates back to the other specifically enumerated types of employers, meaning that only those individuals who have one or more employees in Illinois are "employers" for purposes of the statute. The structure of the statute supports this conclusion. The statute provides an "employee"--defined as one "who is employed ... by an employer," 740 ILCS 174/5--with a cause of action against the employer. 740 ILCS 174/30. Plaintiff is employed by CPFCU, not by the individual defendants, and as a result, her action lies against CPFCU.

Even if this interpretation involved an uncertain reading of the statute-- leading the Court to look to the Illinois courts' interpretation of the common law retaliatory discharge claim for guidance, *In re C.B.L.*, 243 Ill.Dec. 284, 723 N.E.2d at 318--the same outcome results. Illinois courts have unequivocally stated that only employers--and not agents or employees of the employer--can commit the tort of retaliatory discharge. *Buckner v. Atlantic Plant Maint., Inc.*, 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565, 569-70 (Ill.1998). As a result, the Court finds that Plaintiff also cannot state a claim against the individual defendants under the Illinois statute, and the individual defendants are dismissed from Plaintiff's Complaint.

III. Sufficiency of Allegations

*6 Defendants also argue that Plaintiff has failed to (1) identify the specific statute, regulation or rule that she believes CPFCU violated; and (2) allege that Plaintiff disclosed information to the NCUA or another government agency as purportedly required by both § 1790b and the Illinois statute. As explained above, Plaintiff need not allege facts corresponding to each element of a prima facie case to survive a motion to dismiss. Despite the Seventh Circuit's warning to the contrary, *see Kolupa*, 438 F.3d at 714, Defendants here ask the Court to find Plaintiff's complaint deficient for failure to include specific allegations. The Court declines Defendants' request.

With regard to Defendants' first argument, Plaintiff is not obligated to identify the specific statute, regulation, or rule that Defendant purportedly violated. Plaintiff provided Defendant with the underlying factual basis of her claim, which is sufficient to allow Defendants to investigate. As to Defendants' second argument, the Court need not reach the parties' legal dispute regarding whether the relevant statutes require direct disclosure to a government agency, because the argument fails either way. Not only is it improperly based on Plaintiff's alleged failure to plead an element, but it is factually baseless given that Plaintiff has alleged that she personally disclosed concerns to NCUA personnel on two separate occasions. (R. 1-1, Compl. ¶¶ 30, 43.) Plaintiff has provided the Defendants with facts sufficient to allow for investigation of her claim, and Defendants have not shown that Plaintiff is incapable of proving a set of facts consistent with her Complaint that would entitle her to relief. As a result, this portion of Defendants' motion is denied.

## CONCLUSION

Defendants' Motion to Dismiss is granted in part and denied in part. The Motion is granted to the extent that it asks the Court to (1) strike Plaintiff's request for punitive damages under Illinois' Whistleblower Act, 740 ILCS 174/1 *et seq.*; and (2) dismiss Scott Arney, Bryan Milligan, and Leslie Zalewski as Defendants as to both Count I and Count II of the Complaint. The Motion is denied in all other respects. Plaintiff may proceed against the Chicago Patrolmen's Federal Credit Union on Count I and Count II, and her Complaint may seek

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d   Page 7
Not Reported in F.Supp.2d, 2007 WL 952034 (N.D.Ill.)
**(Cite as: 2007 WL 952034 (N.D.Ill.))**

punitive damages pursuant to 12 U.S.C. § 1790b.

Not Reported in F.Supp.2d, 2007 WL 952034 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.