IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOGDAN LIZAK, | ) |
| | ) |
|    *Plaintiff*, | ) |
|    v. | )  No. 08-C-1930 |
| | ) |
| GREAT MASONRY, INC., and | )  Honorable David H. Coar |
| KRZYSZTOF MENDYS, | ) |
|    *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bogdan Lizak's ("Lizak") brought this action against Defendants Great Masonry, Inc. ("Great Masonry") and Krzysztof Mendys ("Mendys") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Employee Classification Act ("IECA"), § 820 ILCS 185/20. Judgment was entered against Defendants, jointly and severally, in the amount of $78, 902.65, and against Great Masonry alone, for $1,000, plus legal fees and costs.

Before the Court is Lizak's motion to award fees and costs, in which he requests attorneys' fees in the amount of $192,584.00 and costs in the amount of $6,256.04. For the following reasons, the court GRANTS in part Lizak's motion, awarding attorneys' fees in the amount of $61,511.25.

## I. Background

This case involved a straightforward and uncomplicated wage and hour dispute. After the dismissal or voluntary withdrawal of Counts II, V, and VI of the complaint, the instant matter proceeded to bench trial on Counts I, III, IV, and VII: failure to pay overtime wages in violation of the FLSA (Count I); retaliatory discharge in violation of the FLSA (Count III); failure to pay overtime wages in violation of the IMWL (Count IV); and failure to identify and classify Lizak as an employee in violation of the IECA (Count VII). As expected from representations made in prior status conferences, Defendants failed to appear at trial on August 19, 2009. Proceedings lasted a single day, in which Lizak presented his case. Lizak then presented a post-trial memorandum.

This Court issued its verdict on September 22, 2009. The Court found in favor of Lizak and against Defendants on Counts I and IV. The Court found in favor of Lizak and against Great Masonry on Count VII. The Court found in favor of Defendants and against Lizak on Count III. Judgment was entered in favor of Lizak and against Defendants, jointly and severally, in the amount of $78,902.65, plus legal fees and costs. Judgment was entered in favor of Lizak and against Great Masonry alone in the additional amount of $1000.00.[1]

On October 20, 2009, Lizak entered a bill of costs for $4,244.81. On December 21, 2009, Lizak filed a motion to award fees and costs, seeking $192,584.00 in attorneys' fees and renewing his request for costs, but in the increased amount of $6,256.04. No explanation was

---

[1] The FLSA provides that an employer who fails to pay the required overtime premium is liable to the employee for the unpaid compensation plus an equal amount as liquidated damages, though liquidated damages are inappropriate if the employer can prove it acted in good faith and had reasonable grounds to believe that the failure to pay overtime was lawful. The IMWL provides that the employer is liable for the unpaid wages and for an additional payment of 2% of the unpaid wages per month for each month until the wages are paid. The Court found that Lizak was entitled to a payment of $28,846.25 in unpaid overtime premiums, $28,846.25 in liquidated damages for Defendants' failure to act in good faith, and $21,210.15 under the IMWL.

given as to the discrepancy between the two bills.[2] On January 21, 2010, the Court granted costs in favor of Lizak in the amount of $4,244.81, as originally requested.

Lizak's attorneys have not received any payment for their work on this case. *See Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518, 520 (7th Cir. 1999) (fees "actually paid in the ordinary course of . . . business" is strong evidence that a fee request is commercially reasonable). Lead attorney Barry Bennett ("Bennett") accepted the case with the understanding that Lizak lacked the resources to pay. Under their agreement, Lizak was not required to make any payments unless Bennett obtained recovery for him. The Bricklayers Union, in return for information developed during the course of the case, paid the out-of-pocket expenses incurred by litigation.

**II.    Legal Standard**

The FLSA provides that, in addition to any judgment awarded, plaintiffs may recover reasonable attorneys' fees. 29 USC § 216(b); *see also Batt v. Micro Warehouse, Inc*., 241 F.3d 891, 893 (7th Cir. 2001). The IMWL also provides for attorneys' fees to the prevailing party. 820 ILCS 105/12(a).

To calculate an appropriate fee award, courts start with the "lodestar" amount, reached by "multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation." *Small v. Richard Wolf Med. Instruments Corp.,* 264 F.3d 702, 707 (7th Cir. 2001); *see also Hensely v. Eckerhart,* 461 U.S. 424, 433 (1983). Under this approach, the party seeking

---

[2] The difference in taxable costs appears to be attributable to Lexis research. However, electronic legal research charges are not recoverable as taxable costs, since these charges are considered a subset of attorney's fees. *Haroco, Inc. v. Amer. Natl. Bank and Trust Co. of Chicago,* 38 F.3d 1429, 1440 (7th Cir. 1994) ("The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching."). The Court also notes that the request for additional money has not been substantiated with evidence, like Lexis billing records, revealing the purpose of the charges, or demonstrating that the costs were reasonably incurred in litigation.

3

fees bears the burden of proving the reasonableness of the hours worked and rates claimed. *Hensley*, 461 U.S. at 433, 436. A good faith effort must be made to exclude excessive, redundant, or unnecessary hours. *Id*. at 434. The Court, for its part, must exclude hours it deems inadequately documented or not reasonably expended on the litigation. *Id.* at 433-34; *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

Once the lodestar amount has been determined, the Court may adjust the award based on a number of factors, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (quoting *Connolly v. Natl. School Bus Serv., Inc.,* 177 F.3d 593, 597 (7th Cir. 1999)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3 (1983) (listing "the novelty and difficulty of the questions" and "the skill requisite to perform the legal service properly" as two of the factors determining a fee award).

When making reductions, a court cannot simply "eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court." *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1314 (7th Cir. 1996) (citations and internal quotation marks omitted). Rather, it must provide a "concise but clear explanation of its reasons" for any reduction. *Uphoff v. Elegant Bath, Ltd*., 176 F.3d 399, 409 (7th Cir. 1999).

**III.    Analysis**

In accordance with the lodestar method, the Court will address the reasonableness of Bennett's requested hourly rate and reported hours.

4

### A. Hourly Rate

An attorney's reasonable hourly rate must reflect his market rate, "defined as the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Small,* 264 F.3d at 707 (internal quotation marks and citation omitted). Evidence of the attorney's own billing rate for comparable work, or the rates of similarly experienced attorneys for comparable work, can help to satisfy the burden of proof. *Id.* The Court must "determine the probative value of each submission" when "arriv[ing] at its own determination as to a proper fee." *Id.* (internal quotation marks and citation omitted).

In making this assessment, the Court must account for the fact that "[h]ourly rates awarded in non-FLSA . . . cases are not particularly relevant as evidence of . . . the reasonable hourly rate . . . at the prevailing market rate for attorneys engaged in FLSA work." *Id.* Indeed, "[j]udges in the Northern District have . . . noted that FLSA cases are less complex than Title VII and other employment-related civil rights litigation." *Id.*; see also, *Holyfield v. F.P. Quinn & Co.*, No. 90 C 507, 1991 WL 65928, at *1 (N.D. Ill. Apr. 22, 1991) ("[I]ssues under the FLSA are not unusually complicated or beyond the capacity of an attorney of average ability.").

Bennett seeks compensation from Defendants at a rate of $450 an hour. The hourly rates for his partner and subordinates are requested as follows: $375 an hour for partner Robert Cervone, $350 an hour for second-year associate Steven Jados; $300 an hour for third-year associates Lakisha Kinsey-Sallis and Kara Eisen, $150 an hour for paralegal Susan Gonzalez, and $85 an hour for research clerk Mia Segal.

Bennett is presently handling five other employment law cases involving "counseling and examination of documents." In two of these cases, partners, associates, and paralegals respectively charge $350, $250, and $85 an hour. The firm charges $400, $275, and $85 an hour

for the other three. Bennett's team is also handling a case requiring analysis of a severance agreement and negotiation of improvements at a rate of $280, $200, and $75 an hour. The requested hourly rates in the instant case are purportedly justified because Bennett's firm adds a 20% premium to their hourly rates in cases that move to litigation.

As further justification for his elevated fees in this matter, Bennett has submitted three affidavits from other attorneys, which describe Bennett's requested rates as generally within the "range" of "usual" rates for labor and employment attorneys with similar skills and experience in Chicago. This information is of little use. *See Barnett v. City of Chicago*, 122 F. Supp. 2d 915, 917 (N.D. Ill. 2001) (noting that attorneys' affidavits attesting that requested rates are reasonable are "not helpful"). Neither Bennett's personal billing examples, nor his peers' affidavits, differentiate between the rates charged for straightforward FLSA cases as opposed to more complex Title VII employment discrimination cases. None of the attorneys have presented evidence of comparable fee awards in FLSA cases. Attorney Robin Potter is the only one who appears to have reviewed more than one document involved in this case. Yet, she similarly describes Bennett's requested rate as vaguely "within the Chicago market and community norm," without differentiating between cases of varying difficulty. She provides a substantial fee award of her own for comparison, but fails to specify the matter for which it was approved. The probative value of the affidavits is therefore minimal.

A survey of recent fee awards for FLSA cases in this district reveals a much lower range of hourly rates. *See, e.g.*, *Riddle v. National Sec. Agency, Inc.*, No. 05 C 5880, 2010 WL 655443, at *2 (N.D. Ill. Apr. 23, 2010) (for litigation of FLSA & IWPCA claims, court awarded fees at an hourly rate of $245, $190 and $100, and $90 for the lead attorney, associates, and paralegal); *Goodale v. George S. May Intern. Co.*, 09 C 7848, 2010 WL 2774013, *4 (N.D. Ill.

July 14, 2010) (for litigation of FLSA claims, court awarded fees at an hourly rate of $275 and $75 for the work of a lead attorney and paralegal); *Garcia v. R.J.B. Properties, Inc.*, No. 06 C 4994, 2010 WL 2836749, at *2 (N.D. Ill. July 19, 2010) (for litigation of FLSA claims, court awarded fee at an hourly rate of $325 for a lead attorney); *Garcia v. Oasis Legal Finance Operating Co.*, 608 F.Supp.2d 975, 979-80 (N.D. Ill. 2009) (for litigation of FLSA claim, court awarded fees at an hourly rate of $300 and $185 an hour for the work of a lead attorney and associate). Fee awards from prior similar cases are relevant to the Court's determination of a reasonable hourly rate and cannot be ignored out-of-hand. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 557 (7th Cir. 1999).

Bennett argues that a higher rate is warranted because this case was unusually difficult. Due to the limited English skills of Lizak and Mendys, some tasks may have required translation services and additional effort. Nevertheless, on a substantive level, this case was straightforward. It presented no complex employment law issues. All in all, there is nothing about this case that made it any more difficult than a typical wage-and-hour matter. The Court awards Bennett a fee rate of $300 per hour, a rate within the range normally charged by Bennett's firm, as established by his own affidavit. Because this rate accounts for the services associated with litigating an FLSA claim, an additional litigation premium is unnecessary. The rates of the other attorneys working on this case are reduced accordingly: hourly rates of $225, $200, $150, $150, $75, and $75 will be applied to the work of Cervone, Jados, Kinsey-Sallis, Eisen, Gonzalez, and Segal, respectively.

### B. Hours Expended

The Court may only award fees for reasonable hours of work expended; redundant, excessive or otherwise unnecessary hours must be excluded. *Hensley v. Eckerhart*, 461 U.S.

7

424, 433-34 (1983). Where an attorney has failed to exclude or otherwise tailor unreasonable entries, "the district court may reduce the number of hours accordingly." *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001).

Bennett claims to have worked a total of 354.05 hours on this case. Notable expenditures of Bennett's time include a self-reported 52.75 hours on preparations for the uncontested, one-day trial, 58.2 hours on the pretrial order, 46.1 hours on discovery, and 32.8 hours on the bill of costs and fee petition, among other endeavors. Bennett seeks compensation for an additional 92.3 hours of work by other attorneys, and 13.95 hours of work by his paralegal and research clerk.

Bennett argues that translation demands arising from the limited English skills of Lizak, combined with Mendys and Defendant's uncooperative conduct during discovery, prolonged matters. The Court will account for these obstacles when making its calculations. Despite these allowances, the hours purportedly expended on this case remain unreasonable. A careful review of the itemized billing records reveals charges for clerical, excessive, or insufficiently detailed work, which will be excluded or reduced accordingly. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (court should disallow time spent on what are essentially "clerical" or secretarial tasks); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986) ("The billing records must be sufficiently clear to enable the district court to identify what hours, if any, are excludable because they are excessive, redundant, or otherwise unnecessary."); *Delgado v. Mark*, No. 6 C 3757, 2009 WL 211862, at *4 (N.D. Ill. 2009) ("[T]ime entries must be sufficiently

detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation.").

The following sums have been calculated after an exhaustive survey of Bennett's billing invoice. The Court finds that Bennett personally spent 53.65 hours dealing with various administrative issues, such as coordinating service of process, filing notices, scheduling meetings and depositions, arranging for translators, checking contact information, organizing files and lists, discussing payments, preparing trial notebooks, and dictating letters or holding lengthy phone conversations on unspecified topics. Because these tasks could easily have been delegated to a secretary, or lack the specificity necessary to determine their reasonableness or relevance, the hours dedicated to them will be excluded.

Bennett also subjected routine scheduling orders, reports, disclosures, pleadings, and other documents to multiple rounds of re-reading or re-writing. At a certain point, given the uncomplicated nature of this case, such work becomes excessive and unnecessary. For example, the boilerplate complaint in the instant case was not challenging for an attorney of Bennett's considerable and specialized experience. It did not involve novel legal claims or require investigation beyond Lizak's minimal allegations. Yet, even though associate Kinsey-Sallis worked 10.2 hours on the complaint, Bennett spent an additional 10.3 hours revising it in several rounds, then amending it. Compensation for time spent on the unremarkable complaint after it was reviewed by Bennett for more than three hours, and returned twice to Kinsey-Sallis for revisions and "significant restructuring" is unreasonable.

Bennett also spent 32.8 hours preparing the bill of costs and fee petition. He did so after conducting multiple rounds of revisions on declarations and category listings. With regard to time spent drafting fee petitions, the Court must decide "whether the hours claimed to have been

9

expended on the fee request bear a rational relation to the number of hours spent litigating the merits." *Spegon*, 175 F.3d at 554; *see also Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988) (finding 1.6 hours billed for preparation of a fee petition was reasonable in light of the approximately 140 hours of time spent litigating the merits of the case). In this case, 3 hours of Bennett's time seems a more reasonable amount of time for the task at hand, in addition to the 2.6 hours paralegal Gonzalez spent preparing charts and breaking down billable hours into categories.

In addition to the 29.8 hours deducted from the preparation of the fee petition, the Court deducts 58.7 hours from Bennett's total billed hours as excessive. This number reflects the sum of hours spent on rounds of extensive review beyond the first two or three, for basic documents produced throughout litigation, principally during discovery and the pretrial stages. Overall, the Court reduces Bennett's hours by a total of 142.15 hours after accounting for clerical, excessive, or insufficiently detailed work charged. This leaves Bennett with 211.9 billable hours, as opposed to the 83.5 hours collectively clocked by his three associates.

The Court cannot fathom how Bennett, a seasoned partner, justified this extraordinary time commitment, especially given this case's lack of procedural or legal complexity, and the unquestionable ability of his capable associates to undertake the bulk of the work (Bennett spares no words in praising his subordinates' skills and independence). Rather than scour the invoice for delegable tasks, however, the Court will give Bennett the benefit of the doubt as to how his firm chooses to allocate time.

**C. Partial Success**

Finally, the Court must account for the dismissal, voluntary withdrawal, or lack of success on Counts II, III, V, and VI. When a plaintiff has only met with partial success, a court

must reduce the fee so that the prevailing party is rightly compensated for the amount "expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435; *Spanish Action Comm. of Chicago v. City of Chicago,* 811 F.2d 1129, 1138 (7th Cir. 1987). "There is no precise rule or formula for making these determinations. [A court] may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. Where, as here, a plaintiff's claims involve interrelated facts or legal theories, the Supreme Court cautions courts against "divid[ing] the hours expended on a claim-by-claim basis." *Id.* at 435. Rather, a court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*.

Lizak's claims fall into a number of substantive categories. Lizak sought relief for Defendants' (1) failure to pay wages (for work performed by Lizak from January 13 through 18, 2008); (2) failure to pay overtime wages (for failure to pay Lizak overtime premiums for work in excess of 40 hours a week over three years); (3) retaliatory discharge (for firing Lizak after he complained about non-payment); and (4) failure to classify Lizak as an employee (for misclassification of Lizak as an independent contractor).

The Court found in favor of Mendys and Great Masonry on Lizak's two retaliatory discharge claims,[3] for which Lizak sought $48,822.05 in damages, $48,822.05 in liquidated damages, and additional punitive damages. Prior to trial, Lizak voluntarily withdrew his failure-to-pay-wages claims. Lizak prevailed on his two failure-to-pay-overtime wages claims, for which he sought and recovered $28,846.25 in unpaid overtime premiums, an equal amount in

---

[3] On Count VI, the Court held that Lizak did not state a claim for retaliatory discharge pursuant to the IMWL, because he had not been fired in contravention of a clearly mandated public policy. *See Wilke v. Salamone*, 404 F. Supp. 2d 1040, 1050 (N.D. Ill. 2005). On Count III, the Court found that Lizak could not prevail on his FLSA retaliatory discharge claim because his complaints were expressed verbally, as opposed to in writing, as required by 29 U.S.C. § 215(a)(3). *See Kasten v. Saint-Gobain Performance Plastics*, 570 F.3d 834, 839-40 (7th Cir. 2009).

liquidated damages, and $21,210.15 in IMWL statutory payments. The Court also found in favor of Lizak on his IECA claim, for failure to designate Lizak as an employee, awarding him the requested amount of $1,000.00.

The overtime and retaliation claims form the crux of this case. Lizak's attorneys expended considerable effort investigating his retaliation claims, battling Defendants' motion to dismiss one of the claims, and pursuing the other claim through trial and the post-trial memorandum, to no avail. However, the legal and factual issues associated with Lizak's retaliation and other claims overlap to some degree. Moreover, it is unclear how much time Lizak's attorneys allocated to the two voluntarily dismissed charges. Taking all this into account, the Court reduces Lizak's fee award by 25%.

## IV. Conclusion

The Court calculates the final lodestar amounts and subsequent adjustments for Lizak's attorneys as follows:

| Attorneys | Rate | Hours | Deductions | Lodestar |
|---|---|---|---|---|
| Bennett | 300 | 354.05 | 142.15 | $63,570.00 |
| Cervone | 225 | 8.85 | 0 | $1,991.25 |
| Jados | 200 | 57.8 | 0 | $11,560.00 |
| Kinsey | 150 | 18.35 | 0 | $2,752.50 |
| Eisen | 150 | 7.3 | 0 | $1,095.00 |
| Gonzalez | 75 | 12.8 | 0 | $960.00 |
| Segal | 75 | 1.15 | 0 | $86.25 |
| | | | TOTAL: | $82,015.00 |
| | | After 25% Reduction for Partial Success: | | **$61,511.25** |

For the foregoing reasons, the Court awards Plaintiff Lizak $61,511.25 in attorneys' fees, to be taxed against Defendants Mendys and Great Masonry.

12

Enter:

/s/ David H. Coar
_____

David H. Coar
United States District Judge

Dated: **July 29, 2010**